(No. 57883.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES BERRY, Appellee.

*Opinion filed February 22, 1984.*

500

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark Rotert and Michael B. Weinstein, Assistant Attorneys General, of Chicago, and Michael E. Shabat, Richard B. Levy, and Marie Quinlivan, Assistant State's Attorneys, of counsel), for the People.

Steven Clark, Deputy Defender, of the Office of the State Appellate Defender, of Chicago (Nancy G. Abrahams, of Aaron, Schimberg, Hess, Rusnak, Deutsch & Gilbert, of Chicago, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, James Berry, was found guilty of

murder and armed violence and was sentenced to a term of 30 years' imprisonment. The appellate court reversed and remanded the cause for a new trial. (111 Ill. App. 3d 487.) We granted the State's petition for leave to appeal pursuant to Rule 315. 73 Ill. 2d R. 315.

Three issues are raised on appeal: (1) Did the trial court's failure to give Illinois Pattern Jury Instruction (IPI), Criminal, No. 25.05 (1968) constitute plain error? (2) Did defendant receive effective assistance of counsel? (3) Did the trial court err by not informing defendant that his attorney was ineffective and by not affording defendant the opportunity to retain competent counsel?

The State's evidence revealed that on the evening of September 13, 1978, defendant was admitted to the apartment of Gertrude Hollie at 4429 South Federal in Chicago. He was there for less than one hour when a friend of his came to the door. Defendant left the apartment to speak with his friend, who was on the porch just outside the apartment. While defendant was on the porch, Richard Spaulding, who lived with Gertrude and was the father of one of her children, arrived at Gertrude's apartment. Billy Square Hollie, Gertrude's brother, was also in the apartment.

A short time after Spaulding entered the apartment, defendant returned to the apartment. Spaulding accused the defendant of selling him some "bad" marijuana. When the two men began shouting at one another, Gertrude stepped between them in an effort to prevent a fight. According to the testimony of Billy Hollie, defendant took out a gun and shot Spaulding, who was unarmed. Gertrude testified that she heard a gunshot and ran into a closet. When she turned around, she observed Spaulding lying on the floor with blood on his shirt. She then saw Billy and the defendant grappling over the gun, which discharged during the struggle. Billy was able to push the defendant out the door. Defendant was

arrested at his apartment a short time later. At that time he told the arresting officers, "I did it. I shot him. Let's go to the station." Spaulding died in a hospital, approximately one month later, as a result of complications arising from the chest wound.

Contrary to the testimony of the above two witnesses, defendant testified that Spaulding was the first to draw a handgun. Defendant stated that when he finished his conversation with his friend, outside Gertrude Hollie's apartment, he began walking toward his girlfriend's apartment, which was on the same floor. At that time Gertrude called out to him to return to her apartment. When he approached the door, Spaulding forced him into the apartment with a gun and told the defendant he was going to shoot him because of the bad marijuana. Defendant stated that, at this point, he pulled out his gun and pointed it at Spaulding but told Spaulding to put his gun down. He also stated that he was trying to back out of the apartment when Billy grabbed his hand, and the gun fired. In an earlier oral statement, made at the police station following his arrest, defendant stated that he fired at Spaulding before the struggle with Billy.

The jury in this case received a series of definitional and issues instructions submitted by the State without objection by defense counsel. These include:

IPI Criminal No. 2.03, the burden-of-proof instruction, which states that the burden is on the State throughout the case to prove the guilt of the defendant, beyond a reasonable doubt.

IPI Criminal No. 7.02, the issue instruction for a murder case, which requires the State to prove all elements of the offense of murder, beyond a reasonable doubt.

IPI Criminal No. 7.06, the issue instruction for voluntary manslaughter, which requires the State to prove,

beyond a reasonable doubt, that defendant's belief that circumstances existed which would have justified his killing the victim, was unreasonable.

IPI Criminal No. 24.06, the instruction defining when the use of force is justified in defense of a person.

In addition, definitional instructions IPI Criminal No. 7.01 (murder) and IPI Criminal No. 7.05 (voluntary manslaughter) were submitted to the jury. The jury was not, however, given IPI Criminal No. 25.05 which, in addition to proving the elements of the crime, requires the State to prove, beyond a reasonable doubt, that the defendant was not justified in using the force which he used. The appellate court, in this case, held that reversible error occurred because the instructions did not inform the jury that the State was required to prove beyond a reasonable doubt that the defendant's actions were not justified. In addition, the court concluded that there was merit to defendant's argument that his counsel was incompetent. 111 Ill. App. 3d 487.

This court has consistently held that the failure to object at trial to an asserted error in jury instructions waives the issue. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 543; *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180; *People v. Roberts* (1979), 75 Ill. 2d 1, 14.) It is also well established that a party may not raise, on appeal, the failure to give an instruction unless he tendered it at trial. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 543; *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 180; *People v. Underwood* (1978), 72 Ill. 2d 124, 129; 73 Ill. 2d R. 366(b)(2)(i).) Additionally, objections not raised in a posttrial motion are deemed waived for appellate review. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 543; *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 181; *People v. Foster* (1979), 76 Ill. 2d 365, 380.) Supreme Court Rule 451(c) sets forth a limited exception to the waiver rule which allows the review of "substantial defects" in instructions

"if the interests of justice require." 73 Ill. 2d R. 451(c); see *People v. Huckstead* (1982), 91 Ill. 2d 536, 544; *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 182; *People v. Roberts* (1979), 75 Ill. 2d 1, 16.

There have been numerous appellate court decisions regarding the failure to give IPI Criminal No. 25.05. As the parties and the appellate court in this case note, these decisions have been divided as to whether this constitutes plain error under Rule 451(c). (73 Ill. 2d R. 451(c); see *People v. Huckstead* (1982), 91 Ill. 2d 536, 544, and cases cited therein.) In *Huckstead*, this precise question was considered. There, the defendant had been charged with murder. The jury received IPI Criminal No. 7.02, the issues instruction for a murder case. Although self-defense had been raised by the defendant, defense counsel made no objection to this instruction and failed to tender IPI Criminal No. 25.05 or include this omission in his post-trial motion as error. Recognizing the very limited use this court has given to the Rule 451(c) exception to the waiver rule, the *Huckstead* court applied the "grave error" and "closely balanced evidence" tests to the facts and circumstances of that case. (See *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 182.) In so doing, the court held that the failure to give IPI Criminal No. 25.05 did not constitute plain error.

The State maintains, in the case at bar, that *Huckstead* "put to rest" the division of opinion displayed by the appellate court on the question of whether the failure to give IPI No. 25.05 constitutes plain error. As such, it is the State's position that the appellate court ignored this court's view of the concept of waiver stated in *Huckstead*. The defendant responds that *Huckstead* is not a *per se* waiver rule which would mandate a negative finding of plain error when IPI Criminal No. 25.05 is omitted in a case where self-defense is an issue.

We agree with defendant and for the reasons to fol-

low affirm the appellate court's holding that, under the circumstances of this case, reversible error occurred by the failure to give the jury IPI Criminal No. 25.05. *Huckstead* emphasized this court's position that the plain-error exception to the waiver rule created by Rule 451(c) (73 Ill. 2d R. 451(c)) is to be confined to the correction of "grave errors" (*People v. Huckstead* (1982), 91 Ill. 2d 536, 544; *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 182; *People v. Roberts* (1979), 75 Ill. 2d 1, 14) or to instances where the case is so close factually that fundamental fairness requires the jury be properly instructed. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 544; *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 182.) Application of this test to the evidence presented in the instant case reveals that there was "grave error" as well as circumstances that were so close factually as to require the tendering of proper jury instructions.

We turn first to the issue of "grave error." In *Huckstead*, the court found that the instructions tendered (IPI Criminal Nos. 2.03, 7.02, 24.06), in conjunction with the closing arguments given by both litigants, sufficiently informed "the jury that the State had the burden of proving that defendant was not justified in the force he used." (*People v. Huckstead* (1982), 91 Ill. 2d 536, 545.) Although issue instruction, IPI Criminal 25.05, had not been offered, defendant's counsel, in closing argument, "repeatedly and specifically" impressed upon the jury the necessity of the State proving that the defendant was not justified in the force he used. Moreover, the State in rebuttal argument reiterated that it was its burden to show that the force used was not justified. As such, the court found that the failure to give IPI Criminal No. 25.05 did not constitute "grave error."

The jury in the case at bar, as in *Huckstead*, was given IPI Criminal Nos. 2.03, 7.02 and 24.06, but, unlike in *Huckstead*, defense counsel failed to inform the jury

in closing argument (or at any time during the trial) of the State's burden of proving, beyond a reasonable doubt, that the defendant was not justified in his use of force. Defense counsel merely made a general reference to the State's burden "of proving [defendant] guilty of each and every allegation that is charged beyond a reasonable doubt." The instructional gap was not filled by the prosecutor who, in rebuttal, merely acknowledged that the State has the burden of proof.

This court strives to apply the waiver rules narrowly and consistently in conformity with the posture of the United States Supreme Court (see generally *Henderson v. Kibbe* (1977), 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212, 97 S. Ct. 1730, 1736, where the Court stated: "It is the rare case in which an improper instruction will justify reversal of a criminal conviction where no objection has been made in the trial court") and the Seventh Circuit Court of Appeals (see generally *United States v. Jackson* (7th Cir. 1978), 569 F.2d 1003, *cert. denied* (1978), 437 U.S. 907, 57 L. Ed. 2d 1137, 98 S. Ct. 3096, where the court looked to the record as a whole and concluded that omission of an instruction that placed the burden of proof on the self-defense issue on the government did not constitute "plain error"). Review of the record in this case reveals, however, that the jury was not apprised that the State had the burden of proving, beyond a reasonable doubt, that defendant was not justified in the force he used and, therefore, grave error resulted.

With respect to the "factually close" prong of the plain-error test, evaluation of the evidence presented indicates that this case was factually close. The record reveals that Richard Spaulding was angry with the defendant for selling him what he perceived as inferior marijuana. While there is nothing in the record to corroborate defendant's testimony that Spaulding was in

possession of a gun, the testimony of both eyewitnesses, Gertrude Hollie and Billy Hollie, indicates that Spaulding was the initial aggressor.

Gertrude testified that Spaulding "grabbed" at the defendant and that she had to push Spaulding because he had his hand over his head and "he was getting ready to hit" the defendant. Billy testified that Spaulding "was going to hit [defendant] or push him" when Gertrude jumped between Spaulding and the defendant. In contrast, the defendant in *Huckstead* stated, prior to the shooting, that he was going to kill the victim. In addition, in *Huckstead*, the initial altercation between the defendant and the victim occurred some time before the fatal attack. The defendant actually left the scene, went home to obtain a .22-caliber rifle, and returned to confront the victim. On the basis of these circumstances, the *Huckstead* court concluded that the case was not close factually on the question of whether the shooting occurred as a result of self-defense. Based on the aforementioned facts, we find this case distinguishable from *Huckstead* and closely balanced on the question of whether the shooting occurred as a result of self-defense. See Ill. Rev. Stat. 1979, ch. 38, pars. 7—1, 7—4.

Under the circumstances of this case, we hold that the trial court's failure to give IPI Criminal No. 25.05 was a critical error which " 'severely threatened the fundamental fairness' of the defendant's trial." (*People v. Huckstead* (1982), 91 Ill. 2d 536, 547; *People v. Roberts* (1979), 75 Ill. 2d 1, 15.) For that reason, the judgment of the appellate court, reversing the judgment of the circuit court and remanding for a new trial, is affirmed. In light of this disposition, it is unnecessary to reach the other issues raised on appeal.

*Judgment affirmed.*